```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------  X
                                       :
 DAVID ZIGLER,                         :
                                       :
                         Plaintiff,    :      20cv2462
                                       :        (DLC)
             -v-                       :
                                       :      OPINION AND
 FEATHERSTONE FOODS, INC.; CARAWAY     :        ORDER
 REALTY, LLC; SESAME DISTRIBUTION,     :
 INC.; JOEL SCHONFELD; KUZARI GROUP,   :
 LP; and MARK RIMER,                   :
                                       :
                         Defendants.   :
                                       :
-------------------------------------  X
```

APPEARANCES

For plaintiff David Zigler:

Lee Scott Shalov
Oliver Marcus Phillipson
Brett Reed Gallaway
McLaughlin and Stern, LLP
260 Madison Ave
New York, NY 10016

For defendants Featherstone Foods, Inc.; Caraway Realty, LLC;
Sesame Distribution, Inc.; and Joel Schonfeld:

Larry Hutcher
Richard C. Wolter
Davidoff Hutcher & Citron LLP
605 Third Avenue
34th Floor
New York, NY 10158

Peter Mayer Ripin
Davidoff Hutcher & Citron LLP
200 Garden City Plaza
Garden City, NY 11530

For defendants Kuzari Group, LP and Mark Rimer:

Neil Leon Postrygacz
Neil L. Postrygacz, Attorney at Law PC
419 Lafayette Street,
New York, NY 10003

DENISE COTE, District Judge:

Plaintiff David Zigler ("Zigler") seeks to enforce his agreement with Joel Schonfeld ("Schonfeld"), which he contends gave him the right of first refusal when Schonfeld sold his company Featherstone Foods, Inc. ("Featherstone").  Zigler has sued Schonfeld, Featherstone, Caraway Realty, LLC, and Sesame Distribution, Inc. (collectively, "Featherstone Defendants") for breach of contract.  In addition, he has sued the purchasers of Featherstone -- Kuzari Group, LP and Mark Rimer (collectively, "Kuzari Defendants") -- for tortious interference with contract. Because Schonfeld's agreement with Zigler is too indefinite to serve as an enforceable contract, the defendants' motions to dismiss this action are granted.

## Background

The following facts are taken from Zigler's complaint ("Complaint"), and documents integral to it.  For purposes of this motion, the facts alleged in the Complaint are taken to be true.  Coal. for Competitive Elec. v. Zibelman, 906 F.3d 41, 48-49 (2d Cir. 2018).

Zigler is a hospitality professional.  Until 2013, he worked for the Hyatt hotel chain as a buyer for its food service division.  Featherstone was one of Hyatt's vendors.

## I.   Zigler Joins Featherstone in 2013.

In February 2013, Schonfeld, Featherstone's owner, suggested that Zigler purchase Featherstone.  When their negotiations stalled, Schonfeld invited Zigler to join Featherstone as an employee so that he could learn the business and eventually succeed him as the owner and president of the company.  Zigler accepted and joined Featherstone as its Director of Purchasing and Finance on August 15, 2013, pursuant to a three-year contract.  After Zigler gave notice in 2016 that he did not wish to renew the contract, Zigler remained at Featherstone as an at-will employee and was later promoted to Vice President of Business Development.

## II.   2017 Contemplated Purchase of Wheatfield

In March 2017, Zigler began considering whether to purchase one of Featherstone's competitors, Wheatfield Distribution ("Wheatfield").  Schonfeld approved of the plan, but on July 21, suggested that Featherstone purchase Wheatfield and Zigler then purchase the combined companies.  In September 2017, however, Schonfeld changed his mind and began to consider whether

Featherstone should acquire Wheatfield's largest customer (Kings Food Market ("Kings")) instead of Wheatfield.

On October 18 and 19, 2017, Zigler sent emails to Schonfeld demanding written assurance that he would have a right of first refusal to purchase Featherstone.  The Complaint asserts that Schonfeld granted Zigler the right of first refusal in exchange for Zigler's "continued efforts as an employee of [Featherstone] related to the acquisition of Kings," and Zigler "abandoning" his plan to purchase Wheatfield for himself.  Schonfeld wrote that "this will all" be Zigler's business one day.  Zigler then ceased to pursue the purchase of Wheatfield and continued his efforts to market Featherstone's products to Kings.

III. February 15, 2018 ROFR Agreement

On February 15, 2018, Schonfeld and Zigler executed the one-sentence agreement ("ROFR Agreement") that is at the heart of this litigation.  It states that "[Schonfeld] will give [Zigler] right of first refusal to purchase Featherstone Foods, Sesame Distribution, Caraway and any related entities."[1]  On May 17, the Featherstone Defendants attempted to substitute a more

---

[1] The Complaint purported to include the ROFR Agreement as "Exhibit 1," but no exhibit was attached.  The defendants attached the ROFR Agreement to their motion to dismiss.  The document is properly considered on this motion as "incorporate[d] by reference" and as "integral to the complaint."  Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995).

detailed four-page agreement for the ROFR Agreement, but neither Zigler nor Schonfeld executed it.

IV.  Schonfeld Sells Featherstone.

In December 2018, Schonfeld executed a letter of intent ("Letter of Intent") pursuant to which the private equity firm Kuzari Group, LP ("Kuzari") would purchase Featherstone.  The Kuzari Defendants knew of the ROFR Agreement and asked that the Featherstone Defendants not disclose the Letter of Intent to Zigler.

In early January 2019, Zigler learned of the Kuzari Defendants' imminent purchase of Featherstone.  Zigler demanded that Schonfeld provide him with a copy of the Letter of Intent. Schonfeld refused.

On January 4, Schonfeld sent Zigler a letter agreement to rescind the ROFR Agreement.  Zigler declined to sign the letter and insisted on exercising his rights pursuant to the ROFR Agreement.  Schonfeld told Zigler that he "would not want to match" the Kuzari terms.  Zigler explained that he could not determine whether he would want to match the Kuzari Defendants' offer until he had reviewed the Letter of Intent.

On January 7, 2019 Zigler resigned from Featherstone.  On January 9, Schonfeld provided Zigler with a "broad outline" of certain key financial figures.  Zigler reaffirmed his interest

in purchasing Featherstone.  In December 2019, Schonfeld completed the sale of Featherstone to the Kuzari Defendants.

Zigler filed this action on March 20, 2020.  On June 11, the defendants moved to dismiss the Complaint.  A June 12 Scheduling Order allowed the plaintiff the option of opposing the motion or filing an amended complaint.  It warned that it would be unlikely that the plaintiff would be given a further opportunity to amend.  On July 17, Zigler opposed the defendants' motion to dismiss.  Attached as an exhibit to Zigler's opposition brief, however, was a "Proposed First Amended Complaint" ("PFAC").  The motion to dismiss became fully submitted on August 14.

The one difference of significance between the Complaint and the PFAC is its statement of the consideration for the ROFR Agreement.  While the Complaint states that the ROFR Agreement gave Zigler a right of first refusal "in consideration of [his] abandonment of his plan to purchase a second company in late 2017 and to instead continue his employment with Featherstone," the PFAC claims that the right of first refusal was given "in consideration of Zigler's abandonment of ongoing negotiations to purchase a second company and to instead continue his employment with Featherstone."

6

## Discussion

The defendants have moved to dismiss the Complaint in its entirety.  The Complaint contains two causes of action, one for breach of contract and a second for tortious interference with contract.

When deciding a motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P., a court must "constru[e] the complaint liberally, accept[] all factual allegations as true, and draw[] all reasonable inferences in the plaintiff's favor."  Zibelman, 906 F.3d at 48-49.  To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  A complaint must do more than offer "naked assertions devoid of further factual enhancement," and a court is not "bound to accept as true a legal conclusion couched as a factual allegation."  Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  In determining the adequacy of a complaint, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."  DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010).

I.   Breach of Contract

In its first cause of action, the Complaint asserts that the Featherstone Defendants breached the ROFR Agreement.  The defendants move to dismiss this claim on the grounds that the ROFR Agreement lacks consideration and is an unenforceable "agreement to agree."

A.   Consideration

Under New York law, "[a]ll contracts must be supported by consideration, consisting of a benefit to the promisor or a detriment to the promisee."  Beitner v. Becker, 824 N.Y.S.2d 155, 156 (2d Dep't 2006).[2]  A contract lacks consideration when the obligation of one party is illusory, meaning only one side is bound to perform.  See Curtis Properties Corp. v. Greif Companies, 628 N.Y.S.2d 628, 632 (1st Dep't 1995).  "The courts avoid an interpretation that renders a contract illusory and therefore unenforceable for lack of mutual obligation and prefer to enforce a bargain where the parties have demonstrated an intent to be contractually bound."  Id.

---

[2] The plaintiff is a resident of Connecticut, and the defendants are all either residents of New York State or have their principal place of business in New York State.  The parties' briefs assume that New York law controls, and this "implied consent . . . is sufficient to establish choice of law." Santalucia v. Sebright Transp., Inc., 232 F.3d 293, 296 (2d Cir. 2000) (citation omitted).

"Generally, past consideration is no consideration and cannot support an agreement because the detriment did not induce the promise.  That is, since the detriment had already been incurred, it cannot be said to have been bargained for in exchange for the promise."  Korff v. Corbett, 65 N.Y.S.3d 498, 502 (1st Dep't 2017) (citation omitted).  Section 5-1105 of the New York General Obligations Law provides an exception to this general rule:

> A promise in writing and signed by the promisor or by
> his agent shall not be denied effect as a valid
> contractual obligation on the ground that
> consideration for the promise is past or executed, if
> the consideration is expressed in the writing and is
> proved to have been given or performed and would be a
> valid consideration but for the time when it was given
> or performed.

N.Y. Gen. Oblig. Law § 5-1105 (emphasis added).

Continuation of at-will employment may constitute consideration.  See, e.g., Taylor v. Blaylock & Partners, L.P., 659 N.Y.S.2d 257, 259 (1st Dep't 1997).  Continuation of at-will employment provides "forbearance [that] is real, not illusory, and the consideration given for the promise is validated." Zellner v. Stephen D. Conrad, M.D., P.C., 589 N.Y.S.2d 903, 907 (2d Dep't 1992).

The defendants first move to dismiss the Complaint on the ground that the ROFR Agreement was not supported by consideration.  The Complaint alleges that Schonfeld gave Zigler

the right of first refusal to purchase Featherstone on February 15, 2018, in exchange for Zigler (1) terminating his negotiations to purchase Wheatfield and (2) continuing to work for Featherstone.  The ROFR Agreement does not refer to either of these commitments by Zigler.

According to the Complaint, Zigler abandoned his plan to purchase Wheatfield in 2017.  That is past consideration and does not constitute legally sufficient consideration to create an enforceable contract since it was not expressly described in the ROFR Agreement.

The PFAC attempts to cure the Complaint's defect by introducing ambiguity.  The PFAC removes the statement that Zigler abandoned his plan to purchase Wheatfield "in late 2017." In its place, the PFAC claims that Zigler abandoned his "ongoing negotiations" to purchase Wheatfield but does not explain when the abandonment occurred.  Obscuring the timeline that was clearly pleaded in the Complaint does not cure the Complaint's defect.  Accordingly, Zigler's termination of his negotiations to purchase Wheatfield does not supply the consideration necessary to enforce the ROFR Agreement.

The Complaint and PFAC also assert that Zigler's continued employment with Featherstone constitutes valid consideration for the ROFR Agreement.  Since continued at-will employment can

constitute consideration, the defendants' motion to dismiss the breach of contract claim for lack of consideration fails.

B.   Agreement to Agree

The defendants next move to dismiss the breach of contract claim on the ground that the ROFR Agreement constitutes an unenforceable agreement to agree.  "To create a binding contract, there must be a manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to all material terms." Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc., 487 F.3d 89, 95 (2d Cir. 2007).  "The law of New York is clear that a contract will not fail for indefiniteness unless the matters left open are material." Id. at 96.  But "a mere agreement to agree, in which a material term is left for future negotiations, is unenforceable." Id. at 95 (citation omitted).

Right of first refusal agreements typically contain a set of material terms.  A right of first refusal agreement creates a right to "preempt" another.  3 Corbin on Contracts § 11.3 (2020).  This right is "subject to an agreed condition precedent, typically the owner's receipt of an offer from a third party and the owner's good-faith decision to accept it." Id.  At that point, the holder of the right may decide "whether or not to create a contract on the same terms that the owner is

willing to accept from the third party."  Id.  "[T]he occurrence of these events (owner's receipt of an offer and the good-faith decision to accept it) satisfies the condition precedent, which 'triggers' the right of first refusal that 'ripens' into an option."  Id.

In Sel-Leb Mktg., Inc. v. Dial Corp., the plaintiff claimed that the defendant breached a right of first refusal agreement that allegedly entitled the plaintiff to make an offer to purchase certain inventory.  No. 01 CIV. 9250 (SHS), 2002 WL 1974056 (S.D.N.Y. Aug. 27, 2002).  The court held the agreement unenforceable because its terms were "so vague that there is no evidence that there was a meeting of the minds demonstrating mutual assent."  Id. (citation omitted).  The Court noted that the complaint had failed to plead any condition precedent, the occurrence of which would have "triggered" the plaintiff's right of first refusal.

The Complaint and PFAC suffer from precisely this defect. The one-sentence ROFR Agreement states only that "Schonfeld will give [Zigler] right of first refusal to purchase Featherstone Foods, Sesame Distribution, Caraway and any related entities." It does not name, much less describe, any condition precedent. Nor does the agreement indicate the duration of the right of first refusal or identify Zigler's consideration for this

commitment by Schonfeld.  Indeed, by indicating that Schonfeld "will" give Zigler a right in the future, it contemplated that there would be another agreement between them.  Significantly, the parties later exchanged a draft of a four-page agreement that might have fleshed out any unstated terms, but neither party executed that agreement.  Accordingly, the ROFR Agreement is too indefinite to constitute an enforceable contract, and Zigler's breach of contract claim fails.

## II.  Tortious Interference

In its second cause of action, the Complaint asserts that the Kuzari Defendants tortiously interfered with the ROFR Agreement.  The defendants move to dismiss this claim on the grounds that the ROFR Agreement is unenforceable and that the Complaint fails to plead any tort damages.

To state a claim for tortious interference under New York law, a plaintiff must allege "(1) the existence of a valid contract between the plaintiff and a third party, (2) the defendant's knowledge of that contract, (3) the defendant's intentional procurement of a third-party's breach of contract without justification, and (4) damages."  Kaplan v. Reed Smith LLP, 919 F.3d 154, 160 (2d Cir. 2019) (citation omitted).

As discussed above, the ROFR Agreement is not an enforceable contract.  Since there was no enforceable contract

with which the Kuzari Defendants can interfere, it is
unnecessary to address the remainder of the defendants'
arguments.  The defendants' motion to dismiss this claim is
granted.

## Conclusion

The defendants' June 11, 2020 motion to dismiss is granted.
The Clerk of Court shall enter judgment for the defendants and
close the case.

Dated:    New York, New York
          January 15, 2021

                              _____
                                      DENISE COTE
                              United States District Judge

14